IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SUSAN KAISER, | ) | CASE NO. 8:13CV218 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| GALLUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 102). For the reasons discussed below, the Motion will be granted.

## FACTS

The parties' briefs (Filing Nos. 103, 118,122) and indexes of evidence (Fling Nos. 103-1 to 103-37[1], 114) reveal that the following facts are not in dispute.[2]

Defendant Gallup, Inc. ("Gallup"), is a Delaware corporation with its principal place of business in Omaha, Nebraska. Part of Gallup's business involves telephone surveys.

Plaintiff Susan Kaiser ("Kaiser") was at all relevant times a resident of Lincoln, Nebraska. She began at-will employment at Gallup's Downtown Lincoln call center in November 2003. She initiated and conducted structured telephone surveys, asking specific questions, following a required interview format and technique, and recording answers. After two years as a part-time associate interviewer, Kaiser was selected for Gallup's "Premier Team," an elite group of Gallup's highest performing interviewers.

---

[1] Those documents in Gallup's Index of Evidence that Kaiser seeks to strike in her Motion to Strike and Motion in Limine (Filing No. 119) were not considered by the Court.

[2] The facts summarized in this section were supported by pinpoint citations to admissible evidence in the record and were admitted by the parties, or not properly resisted as required by NECivR 56.1 and Fed. R. Civ. P. 56: "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

In 2007, Kaiser was involved in a car accident that affected her ability to work. She suffered multiple physical and mental disorders, including amnesia, blackouts, pre-epilepsy, post-traumatic stress disorder, depression, vestibular disorder, seizures, sleep apnea, vision impairment, memory impairment, hearing impairment, brain injury, chronic inflammation of the voice box, asthma, and vertigo. Her medical and psychological conditions limited her ability to sleep, work, concentrate, drive, and care for herself, as well as impairing her cognitive functions.

On July 28, 2008, Gallup advised Kaiser's medical provider of the essential functions of Kaiser's position and requested information about the nature and extent of her condition, the duration of her condition, her prognosis, and any reasonable accommodations that would allow her to perform essential functions of her job.

In August 2008, Kaiser moved to Gallup's Bellevue location, where Seth Schuchman was her manager. On September 16, 2008, Kaiser met with Gallup's Vice President and Associate Counsel, Ken Andersen, as well as Schuchman and another Gallup manager, to discuss Kaiser's condition and her request for accommodations. During that meeting, the parties agreed that Kaiser would work on only three projects and would not work more than 40 hours per week without medical authorization.

In August 2010, Kaiser moved to Gallup's Lincoln Greentree location, where her manager was Jenny Higgins. At Kaiser's request, Higgins permitted Kaiser to focus on a single project due to the limitations she suffered with her memory. Gallup also provided Kaiser with a special chair to accommodate her back issues, and exempted her from certain requirements imposed on other Gallup employees. As of September 26, 2011, Gallup met all Kaiser's requests for accommodations, including her request for a place to

work with little distraction.

In September 2011, Kaiser experienced problems with the quality of her work. She skipped two internal quality assurance statements in one week and was issued an Employee Corrective Action Form. The work errors Kaiser made in September 2011 were offenses for which she could have been terminated. Higgins had terminated the employment of other Gallup interviewers for a single offense of skipping an internal quality assurance statement. To help Kaiser reduce distractions and prevent further errors, Higgins moved Kaiser's desk to a less distracting area. Kaiser made no objection, and she perceived that Higgins was being kind.

At some point after September 27, 2011, Kaiser informed Higgins that she was diagnosed with a condition related to seizures. Higgins asked what she could do to help. Kaiser took a medical leave from the end of September 2011 through November 2011, and Gallup helped Kaiser obtain short-term disability benefits during her leave.

In January 2012, Kaiser asked Higgins if she could relocate to Gallup's Edgewood center in Lincoln before the rest of the members of the Premier Team were relocated there in connection with a planned merger of the Greentree and Edgewood centers. Higgins granted Kaiser's request. Higgins remained Kaiser's manager following Kaiser's move to the Edgewood center and throughout the remainder of Kaiser's employment with Gallup.

In May 2012 Kaiser received another Employee Corrective Action Form for again skipping Gallup's internal quality assurance statement. Kaiser understood that completion of the internal quality assurance statements was an essential function of her job; she knew her error was an offense for which she could be terminated; and she had been warned about the seriousness of such an error.

In May and June of 2012, Kaiser spoke to at least six of her co-workers and four Gallup managers about what she perceived to be quality issues with another employee's performance. When she raised her concerns with each manager, she did not tell the manager that she had already raised the issue with a different manager. Kaiser later spoke to several co-workers, expressing her dissatisfaction with the manner in which Gallup managers handled her complaint about the employee's performance. Higgins believed that Kaiser should not have raised concerns about the performance of another employee with her co-workers. Other managers also expressed concerns to Higgins about the manner in which Kaiser pursued her complaints.

On June 14, 2012, Higgins terminated Kaiser's employment, indicating that Kaiser engaged in inappropriate behavior, negativity, and disruption of the workplace. Kaiser considered Higgins to be honest.

Kaiser admitted it was improper for her to complain to other employees about Gallup management and that her complaints about management directed to other employees had a negative effect on the workplace. She admitted that managers and not co-workers should address employee performance issues, and that her conduct had a negative effect on the workplace when she did not trust or allow managers to handle personnel issues. She further admitted that she did not treat a specific Gallup manager in a professional manner in May and June 2012 when she complained about him to several other employees and managers in connection with the incident described above. She acknowledged that she should have raised her concerns with one Gallup manager and then trusted Gallup management to address the issue.

Although Kaiser was aware of Gallup's policies and procedures promoting equal

4

employment opportunity and prohibiting harassment and retaliation, and she was familiar with the process for voicing concerns about such issues to Gallup's designated managers, Kaiser never voiced any concern about discrimination or harassment based on her disabilities during the course of her employment with Gallup. Nor did she voice any concern about retaliation during the course of her employment with Gallup.

Kaiser brought this action in the district court of Lancaster County, Nebraska, on June 13, 2013, alleging (1) failure to make reasonable accommodation for her disabilities in violation of the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 20-148, and the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101-12213; (2) retaliation in violation of NFEPA and ADA; and (3) discrimination on the basis of her disabilities in violation of NFEPA and ADA. (Filing No. 1-1.) Gallup removed the action to this Court on July 16, 2013.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotation marks omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom*

*Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) (internal quotation marks omitted).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). Otherwise, where the

6

Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotation marks omitted).

## DISCUSSION

### I. Failure to Accommodate

Under the ADA[3], an employer must "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (quoting 29 C.F.R. 1630.9(a) (2003)) (internal quotation marks omitted). "[T]he plaintiff fails to make a prima facie case if he fails to show he needs an accommodation." *Id.* at 770 (emphasis omitted) . "[T]here must be a showing of a causal connection between the accommodation and the disabled employee, so the employee would be denied the employment benefit but for the accommodation." *Id.* at 771. "[B]ecause necessity is part of the prima facie case, the showing the plaintiff needs the accommodation precedes the question whether the accommodation was reasonable." *Id.*

For purposes of the Court's analysis, it is assumed that Kaiser was at all relevant times a qualified person with a disability under the ADA and NFEPA.

Kaiser alleges that the work station Gallup provided to her after she returned from medical leave in November 2011 did not accommodate her disabilities. Specifically, she

---

[3] "The disability discrimination provisions of NFEPA are patterned after the ADA," and Nebraska courts look to federal ADA decisions when construing NFEPA. *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002).

claims that her desk was moved to a middle-seat location rather than an end-seat location, with less desirable lighting, causing her to be distracted by excessive noise and leading her to become depressed.  Evidence cited by Kaiser in support of this allegation is not such that any reasonable jury could infer that Gallup failed to accommodate her disabilities with respect to her seating location.[4]  Instead, the evidence indicates that Kaiser made conflicting requests for accommodations related to her seating assignment, *i.e.*, requests for a location away from noise and distractions, *and* requests for placement amid co-workers to accommodate her outgoing nature, so she would not feel isolated.

Kaiser also alleges that in December 2011 she asked a Gallup manager for a printed copy of an email communication concerning a Gallup survey and the manager yelled at her and failed to provide her with the printed document.  Assuming Kaiser's allegation is true, she nonetheless failed to demonstrate that the document she requested was needed for the performance of her job duties or that the manager's failure to provide the document when requested in any way precluded her from performing essential functions of her job.

---

[4] Kaiser cites an email string she initiated with Higgins in January 2016.  (Filing No. 114-12 at ECF 11-12.)  On January 25, 2012, Kaiser wrote: "I might consider the desk across from Joe. I haven't checked out the lighting."  Higgins responded: "The first three are on Dialer 2 – so you don't want those. The back is dialer one – you want those ☺".  On January 26, 2012, Kaiser wrote: "Hi, Jenny, I sat in the other desk last night and the angle is the same as my original desk. Those huge round lights outside the break area reflect through the glass."  Higgins responded: "You aren't a pain. ☺  There are desks along the South side that would be away from the light.  The corner ones, just may not be an option especially if the light is a medical issue.  Once you sit in those let me know how it feels."  Kaiser responded: "Jenny, the difficult part is that I am not able to sit in a corner away from people and I already know that.  That back corner would not be a good move for me psychologically.  Confidentially I am currently struggling with depression.  A lot of stressors over the past months.  My top strength is Woo.  I have already walked around back there and it has too much of an isolated feel.  Even in the best of spirits it would go against my outgoing nature. If my glasses, etc. don't work, I may just stay out on the interviewing floor."  Higgins responded: "Actually if you sit in desk #4 you are across from Jennie and Anita is diagonal to you.  Also you will be in the traffic line to my office so LOTS of people walking by your desk.  It might be a great area to consider for a good view of everyone headed down to this end of the center.  Don't think that because isn't [sic] a corner it can't work.  Let me know."

Finally, Kaiser asserts that Gallup failed to enter into a deliberative process with her to address her requests for accommodation. "There is no per se liability under the ADA if an employer fails to engage in the interactive process." *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015) (citing *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000)). "However, at the summary judgment stage 'the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith.'" *Id.* (quoting *Cravens*, 214 F.3d at 1021). "An employee with a disability must show the following elements to establish his employer failed to participate in the interactive process: (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* Viewing the evidence in the light most favorable to Kaiser, the record is clear that Gallup made a good faith effort to assist Kaiser in finding reasonable accommodations for her disabilities. "[A] disabled individual is not entitled to an accommodation of his choice." *Rehrs v. Iams Co.*, 486 F.3d 353, 359 (8th Cir. 2007).

## II. Retaliation

"The ADA also prohibits employers from discriminating against any individual because that individual 'has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d

963, 972 (8th Cir. 2014) (quoting *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir.2013)). "In order to succeed on this retaliation claim, there must either be direct evidence of retaliation or an inference of retaliation must be created under the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014)) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). Without direct evidence to establish a retaliation claim, a "plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity." *Id.* (quoting *Hill*, 737 F.3d at 1218) (alterations omitted). "Once this prima facie case is established, the claim proceeds under the familiar *McDonnell Douglas* burden-shifting framework." *Id.*

Assuming, without deciding, that Kaiser can establish a prima facie case of retaliation, Gallup articulated a legitimate, non-retaliatory reason for its adverse action. The burden then shifts to Kaiser to demonstrate that Gallup's proffered reason was pretext for retaliation.

"A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner . . . ." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Kaiser has shown neither. Based on the undisputed evidence before the Court, no reasonable jury could infer that Gallup terminated Kaiser's employment in retaliation for her exercise of rights under the ADA, ADAAA, or NFEPA .

### III.  Discrimination

Because Kaiser did not present any direct evidence of disability discrimination, the Court must analyze her claim under the *McDonnell Douglas* framework. First, Kaiser must

establish a prima facie case of disability discrimination. "To establish a prima facie case of discrimination under the ADAAA, a plaintiff must show that (1) he is a disabled person within the meaning of the ADAAA; (2) he was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Minnihan*, 779 F.3d at 810 (citing *E.E.O.C. v. Wal–Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007)). "In order to be a qualified individual for the purposes of the ADAAA, the plaintiff must '(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" *Id. (*quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003)).

If Kaiser establishes a prima facie case of discrimination, the burden shifts to Gallup to articulate a legitimate, non-discriminatory reason for the adverse action. *Product Fabricators,* 763 F.3d at 969. If Gallup demonstrates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Kaiser to demonstrate that the proffered reason was a pretext for discrimination. *Id.*

Assuming, without deciding, that Kaiser can meet her initial burden of proving a prima facie case of discrimination, Gallup has presented a legitimate non-discriminatory reason for her termination, and the burden shifts to Kaiser to demonstrate that the reason was a pretext for discrimination.

Kaiser alleges that her performance errors were related to her disability, and that Gallup treated similarly situated non-disabled employees in a more favorable manner. The evidence before the Court, however, demonstrates that Gallup terminated other non-disabled employees who committed errors of the kind for which Kaiser received more

lenient corrective actions.

With respect to her termination, Kaiser has not presented any evidence from which a reasonable jury could infer that Gallup's proffered reasons for the termination of her employment were a pretext for discrimination against her on the basis of her disabilities.

Accordingly,

IT IS ORDERED:

1. Defendant Gallup Inc.'s Motion for Summary Judgment (Filing No. 102) is granted;

2. All other pending motions are denied as moot;

3. A separate Judgment will be entered.

DATED this 13th day of April, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge